## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA

| | | |
|---|---|---|
| LAWRENCE HOLLIN, Derivatively on Behalf of Nominal Defendant VESTIS CORPORATION, | ) ) ) | |
| | ) | Case No. _____ |
| Plaintiff, | ) ) | |
| | ) | JURY TRIAL DEMANDED |
| v. | ) ) | |
| KIMBERLY SCOTT, PHILLIP HOLLOMAN, RICHARD BURKE, TRACY JOKINEN, LYNN MCKEE, DOUG PERTZ, MARY ANNE WHITNEY, ENA WILLIAMS, and RICK DILLON, | ) ) ) ) ) ) ) | |
| | ) | |
| Defendants, | ) ) | |
| and | ) ) | |
| VESTIS CORPORATION, | ) ) | |
| Nominal Defendant. | ) | |

## VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

Plaintiff Lawrence Hollin ("Plaintiff"), by and through his undersigned attorneys, brings this derivative complaint for the benefit of nominal defendant Vestis Corporation ("Vestis" or the "Company"), against certain current and former executive officers and members of the Company's Board of Directors (the "Board") for breaches of fiduciary duties, unjust enrichment, waste of corporate assets, and violations of Sections 10(b) of the Securities Exchange Act

of 1934 (the "Exchange Act"). Plaintiff alleges the following based upon personal knowledge as to himself and his own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of Defendants' publicly available documents, conference call transcripts and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, press releases published by and regarding Vestis, legal filings, news reports, securities analysts' reports about the Company, and other publicly available information.

## NATURE OF THE ACTION

1.    This is a shareholder derivative action brought on behalf of Vestis against certain current and former officers and members of the Company's Board (collectively, the "Individual Defendants") (defined below) for, among other things, breaching their fiduciary duties to the Company and its stockholders by intentionally or recklessly making or permitting the dissemination of materially false and misleading statements and omissions between October 2, 2023 and May 1, 2024, inclusive (the "Relevant Period").

2.    Vestis is a provider of uniform rentals and workplace supplies to over 300,000 locations across the United States and Canada. The Company customer

base includes industries such as manufacturing, hospitality, retail, pharmaceuticals, and healthcare.

3.      Historically, Vestis operated as a division of food service and facilities services provider Aramark named Aramark Uniform Services. Vestis became a separate, publicly traded company in September 2023 following a spinoff from Aramark (the "Spinoff") and began trading as a public company on October 2, 2023 on the New York Stock Exchange ("NYSE").

4.      On September 13, 2023, prior to its entry in the NYSE, Company executives held the first ever "Vestis Analyst Day." At the event, incoming Chief Executive Officer ("CEO") Kimberly Scott ("Scott") explained that she had "joined Aramark Uniform Services a couple of years ago with the intent of preparing the business for this exact moment." Scott described the to-be Vestis business as a growth business, informing investors they could expect "5% to 7% top line growth on" compound annual growth rate ("CAGR").

5.      During a call with analysts for the event, the Company's top executives identified three areas of the business that would support growth, including: (1) high quality new customers; (2) retention of existing customers; and (3) the ability to increase pricing. As for pricing, Chief Financial Officer ("CFO") Rick Dillon ("Dillon") stated, "we've also demonstrated our ability to take price."

6.     The Company's top executives continued to give an overwhelmingly positive depiction of the business, claiming to have: data analytics with a focus on its customer base; sales representatives who could cross-sell the existing customer base; and a sales force that was identifying and developing new customers. Scott, for instance, declared that "investments are in place, they've been made, they're in our run rate."

7.     Following the Analyst Day, and throughout the Relevant Period, the Company and its top executives repeatedly praised the execution of their plan. On November 29, 2023, during the Company's first earnings call with investors as a publicly traded company, Scott highlighted the "service excellence culture" at the Company and boasted about the Company's focus on "amazing customer experience," pointing out the "really, really great feedback" Vestis had received from its customer service initiatives.

8.     On February 7, 2024, in a current report filed on Form 8-K with the SEC, Vestis reported that it "continues to expect to deliver revenue growth in the range of 4.0 to 4.5% through our focus on providing service excellence to our customers and delivering high-quality growth" and that it "continue[s] to expect our adjusted [earnings before interest, taxes, depreciation, and amortization ("EBITDA")] margin to be approximately 14.3%." During a call with analysts and investors held that same day, Scott remarked, ""[W]e expect acceleration in our

growth rates that will follow similar patterns from prior years," and "we are also seeing opportunity for additional pricing actions in the back half of the year."

9.     Behind the scenes, however, Aramark had chronically underinvested in the Uniform Services division in the years leading up to the Spinoff, leaving the business with outdated facilities and an underperforming sales force. As a result, the Company has since admitted that "service gaps" persisted within Vestis leading up to the Spinoff and throughout the Relevant Period that rendered Vestis unable to execute to the growth plan which its executives had touted.

10.     On May 2, 2024, the Company issued a press release reporting its financial results for the second quarter of fiscal year 2024. Scott was quoted in the press release, stating, "Our results in the quarter and our outlook for the year are not in line with expectations." The press release also provided a "Revised Fiscal Year 2024 Outlook," reporting that the Company "now expect[ed] to deliver fiscal 2024 revenue growth in the range of [negative] (1)% to 0%." On a call with analysts and investors held that day, Scott explained the "challenges" facing the Company "related to sales productivity and deliberate moderated pricing actions[,]" and that the Company "also made the recent and deliberate decision to moderate pricing actions in the second quarter and the back half of the fiscal year in order to realize improved retention while we enhance our services processes."

Scott added that the pricing decision, "is negatively impacting our revenue and EBITDA in the second half of the year."

11.     With respect to the "service gaps," Scott added that "we know that more than 70% of the [customer] cancellations are due to causes that are within our control."

12.     On this news, the price of Vestis stock dropped 45%, from a closing price of $18.47 per share on May 1, 2024, to a closing price of $10.16 per share on May 2, 2024.

13.     As set forth herein, the Individual Defendants breached their fiduciary duties by issuing, causing the issuance of, and/or failing to correct the materially false and misleading statements and omissions of material fact to the investing public. Specifically, the Individual Defendants made or caused the Company to make false and misleading statements, and omitted material facts, in that: (a) Aramark had historically underinvested in the Aramark Uniform Services business, which would become Vestis following the Spinoff; (b) Vestis operated with outdated facilities and an underperforming sales force; and (c) the Company's outdated facilities and underperforming sales force led to "service gaps" that had impeded the Company's levers of growth and had resulted in customer attrition. As a result, the Individual Defendants caused the Company's public statements to be materially false and misleading at all relevant times.

14.    Additionally, in breach of their fiduciary duties, the Individual Defendants caused the Company to fail to maintain adequate internal controls.

15.    As a result of the foregoing, a securities fraud class action was filed against the Company, CEO Scott, and Vice President and CFO Dillon captioned *Plumbers, Pipefitters and Apprentices Local No. 112 Pension Fund v. Vestis Corporation et al*, Docket No. 1:24-cv-02175 (N.D. Ga. May 17, 2024) (the "Securities Class Action"). The Securities Class Action has exposed the Company to massive class-wide liability.

16.    In light of the Individual Defendant's misconduct—which has subjected the Company to the Securities Class Action, the need to undertake internal investigations, the need to implement adequate internal controls over its financial reporting, losses from the waste of corporate assets, and losses due to the unjust enrichment of the Individual Defendants who were improperly overcompensated by the Company and/or who benefitted from the wrongdoing alleged herein—the Company will have to expend millions of dollars.

17.    Moreover, in light of the breaches of fiduciary duty engaged in by the Individual Defendants, most of whom are the Company's current directors, their collective engagement in fraud, the substantial likelihood of the directors' liability in this derivative action and Defendants' liability in the Securities Class Action, their being beholden to each other, their longstanding business and personal

7

relationships with each other, and their not being disinterested and/or independent directors, a majority of Vestis's Board cannot consider a demand to commence litigation against themselves and the other Individual Defendants on behalf of the Company with the requisite level of disinterestedness and independence. Accordingly, Plaintiff did not make a demand on the Board because, as further detailed herein, demand would be a futile and useless act.

**JURISDICTION AND VENUE**

18.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and section 27 of the Securities Exchange Act of 1934 (the "Exchange Act") over the claims asserted herein for violations of sections 10(b) of the Exchange Act and Rule 10b-5 (17 C.F.R.§240.10b-5) promulgated thereunder by the SEC.

19.    This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

20.    This action is not a collusive action designed to confer jurisdiction on a court of the United States that it would not otherwise have.

21.    In connection with the acts, conduct and other wrongs complained of herein, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, the United States mail, and the facilities of a national securities market.

22.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and 1401 because Nominal Defendant Vestis is headquartered in this District, conducts business in this District, and several of the acts and omissions charged herein occurred in substantial part in this District.

## PARTIES

*Plaintiff*

23.     Plaintiff is and has been a continuous shareholder of Vestis common stock at all relevant times.

*Nominal Defendant*

24.     Nominal Defendant Vestis is incorporated under the laws of Delaware, with its principal executive offices located at 500 Colonial Center Parkway, Suite 140, Roswell, Georgia. Vestis's common stock trades on the NYSE under the ticker symbol "VSTS."

*Individual Defendants*

25.     Defendant Scott has served as the Company's CEO and as a member of the Board since the Spinoff. Scott joined Aramark in October 2021 to serve as President and CEO of Aramark Uniform Services and to prepare Vestis to be a standalone, independent public company. According to the Company's Information Statement, dated September 11, 2023, filed with the SEC (the "Information Statement"), under the terms of Scott's offer letter for employment,

Scott was entitled to an annual base salary of $775,000 and a target bonus of 100% of base salary. Upon the Spinoff, and subject to approval by Vestis' Board of Directors, Ms. Scott's annual base salary will be increased to $850,000 and her target bonus will be increased to 125% of base salary. Ms. Scott's offer letter also contemplated annual equity grants with a target value of at least $1,750,000 and, upon the Spinoff, an incentive grant with respect to shares of Vestis with a target value of $3,600,000 reduced by the target value of any annual equity grants made by Aramark to Ms. Scott within 12 months of the Spinoff, with future annual equity incentive awards with a target grant date value of at least $3,600,000. Defendant Scott is also named as a defendant in the Securities Class Action.

26.    Defendant Phillip Holloman ("Holloman") has served as a director and the Chairman of the Board since the Spinoff. Defendant Holloman also serves as a member of the Board's Nominating, Governance, and Corporate Responsibility Committee. According to the Information Statement, Defendant Holloway is entitled to compensation as provided in the Company's non-employee director compensation program (the "Director Compensation Program"). The Director Compensation Program provides:

**Annual Retainer**

Vestis' non-employee director compensation program is expected to provide the following: (1) an annual cash retainer equal to $100,000 paid in four equal installments quarterly, in arrears; and (2) an annual

grant of Vestis equity with a grant date value equal to $140,000, which will be granted (a) on or following the distribution date on a pro-rated basis (assuming a 12-month award cycle) for each director's service on Vestis' Board of Directors during the period commencing on the distribution date and ending on January 30, 2024 (the approximate date prior to the date on which Vestis' annual meeting of stockholders would have been scheduled, if one were required) and (b) annually thereafter, on the date of Vestis' annual meeting of stockholders for so long as the director remains a member of Vestis' Board of Directors. Annual grants will vest subject to the director's continued service on Vestis' Board of Directors on the date of the subsequent annual meeting of stockholders (with the initial annual grant to vest on January 30, 2024), and the shares in respect thereof are generally deliverable on the first day of the seventh month following the date the non-employee director ceases to serve on Vestis' Board of Directors.

**Special Grant**

In consideration for the independent advisory services provided by certain directors through the distribution date, upon the distribution such directors will receive a special grant of deferred stock units with a grant date value equal to an amount determined by multiplying (1) the number of full and partial months from and including January 2023 to and including the month in which the distribution date occurs by (2) $20,000, which deferred stock units will be fully vested on the date of grant and otherwise have the terms established for Aramark non-employee director deferred stock unit awards, subject to the approval of Vestis' Board of Directors.

27.    Defendant Richard Burke ("Burke") has served as a member of the Board since the Spinoff. Defendant Burke also serves as Chair of the Board's Nominating, Governance, and Corporate Responsibility Committee and as a member of the Audit Committee. Defendant Burke is entitled to compensation as provided in the Company's Director Compensation Program.

28.     Defendant Tracy Jokinen ("Jokinen") has served as a member of the Board since the Spinoff. Defendant Jokinen also serves as Chair of the Board's Audit Committee and as a member of the Compensation and Human Resources Committee. Defendant Jokinen is entitled to compensation as provided in the Company's Director Compensation Program.

29.     Defendant Lynn McKee ("McKee") has served as a member of the Board since the Spinoff, after having served as executive vice president and chief human resources officer for Aramark from 2004 to 2022. Defendant McKee is entitled to compensation as provided in the Company's Director Compensation Program.

30.     Defendant Doug Pertz ("Pertz") has served as a member and Vice Chairman of the Board since the Spinoff. Defendant Pertz also serves as Chair of the Board's Compensation and Human Resources Committee and as a member of the Audit Committee. Defendant Pertz is entitled to compensation as provided in the Company's Director Compensation Program.

31.     Defendant Mary Ann Whitney ("Whitney") has served as a member of the Board since the Spinoff. Defendant Whitney also serves as a member of the Board's Audit Committee. Defendant Whitney is entitled to compensation as provided in the Company's Director Compensation Program.

32.     Defendant Ena Williams ("Williams") has served as a member of the Board since the Spinoff. Defendant Williams also serves as a member of the Board's Compensation and Human Resources Committee and the Nominating, Governance, and Corporate Responsibility Committee. Defendant Williams is entitled to compensation as provided in the Company's Director Compensation Program.

33.     Defendant Dillon has served as the Company's CFO since the Spinoff, after having joined Aramark in May 2022 to serve as CFO of Aramark Uniform Services. According to the Information Statement, Dillon's offer letter for employment provides for an annual base salary of $600,000 and a target bonus of 75% of annual base salary (prorated for fiscal year 2022 based on the effective date of Dillon's employment), as well as equity awards with a grant date value of $425,000 in connection with Mr. Dillon's hiring by Vestis, and annual equity awards with a grant date value of $850,000. Defendant Dillon is named as a defendant in the Securities Class Action.

34.     Defendants referenced in paragraphs 25 through 33 are herein referred to as the "Individual Defendants."

35.     The Individual Defendants, together with Vestis, are herein referred to as "Defendants."

13

## **FIDUCIARY DUTIES OF THE INDIVIDUAL DEFENDANTS**

36.     By reason of their positions as officers and/or directors of Vestis, and because of their ability to control the business and corporate affairs of Vestis, the Individual Defendants owed Vestis and its shareholders fiduciary obligations of trust, loyalty, good faith, and due care, and were and are required to use their utmost ability to control and manage Vestis in a fair, just, honest, and equitable manner.  The Individual Defendants were and are required to act in furtherance of the best interests of Vestis and its shareholders so as to benefit all shareholders equally.

37.     Each director and officer of the Company owes to Vestis and its shareholders the fiduciary duty to exercise good faith and diligence in the administration of the Company and in the use and preservation of its property and assets and the highest obligation of fair dealing.

38.     The Individual Defendants, because of their positions of control and authority as directors and/or officers of Vestis, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein.

39.     To discharge their duties, the officers and directors of Vestis were required to exercise reasonable and prudent supervision over the management, policies, controls, and operations of the Company.

14

40.     Each Individual Defendant, by virtue of his or her position as a director and/or officer owed to the Company and to its shareholders the highest fiduciary duties of loyalty, good faith, and the exercise of due care and diligence in the management and administration of the affairs of the Company, as well as in the use and preservation of its property and assets.  The conduct of the Individual Defendants complained of herein involves a knowing and culpable violation of their obligations as directors and/or officers of Vestis, the absence of good faith on their part, or a reckless disregard for their duties to the Company and its shareholders that the Individual Defendants were aware or should have been aware posed a risk of serious injury to the Company.

41.     As senior executive officer and directors of a publicly-traded company whose common stock was registered with the SEC pursuant to the Exchange Act and traded on the NYSE, the Individual Defendants had a duty to prevent and not to effect the dissemination of inaccurate and untruthful information with respect to the Company's financial condition, performance, growth, financial statements, products, management, internal controls, earnings, and present and future business prospects, including the dissemination of false and/or materially misleading information regarding the Company's business, prospects, and operations, and had a duty to cause the Company to disclose in its regulatory filings with the SEC all those facts described in this Complaint that it failed to

disclose, so that the market price of the Company's common stock would be based upon truthful, accurate, and fairly presented information.

42.     To discharge their duties, the officers and directors of Vestis were required to exercise reasonable and prudent supervision over the management, policies, practices, and internal controls of the Company.  By virtue of such duties, the officers and directors of Vestis were required to, among other things:

(a)     ensure that the Company was operated in a diligent, honest, and prudent manner in accordance with the laws and regulations of Delaware, Georgia, and the United States, and pursuant to Vestis's own Business Conduct Policy (the "Code of Conduct");

(b)     conduct the affairs of the Company in an efficient, business-like manner so as to make it possible to provide the highest quality performance of its business, to avoid wasting the Company's assets, and to maximize the value of the Company's stock;

(c)     remain informed as to how Vestis conducted its operations, and, upon receipt of notice or information of imprudent or unsound conditions or practices, to make reasonable inquiry in connection therewith, and to take steps to correct such conditions or practices;

(d)     establish and maintain systematic and accurate records and reports of the business and internal affairs of Vestis and procedures for the

reporting of the business and internal affairs to the Board and to periodically investigate, or cause independent investigation to be made of, said reports and records;

(e)   maintain and implement an adequate and functioning system of internal legal, financial, and management controls, such that Vestis's operations would comply with all applicable laws and Vestis's financial statements and regulatory filings filed with the SEC and disseminated to the public and the Company's shareholders would be accurate;

(f)   exercise reasonable control and supervision over the public statements made by the Company's officers and employees and any other reports or information that the Company was required by law to disseminate;

(g)   refrain from unduly benefiting themselves and other Company insiders at the expense of the Company; and

(h)   examine and evaluate any reports of examinations, audits, or other financial information concerning the financial affairs of the Company and to make full and accurate disclosure of all material facts concerning, inter alia, each of the subjects and duties set forth above.

43.   Each of the Individual Defendants further owed to Vestis and the shareholders the duty of loyalty requiring that each favor Vestis's interest and that of its shareholders over their own while conducting the affairs of the Company and

refrain from using their position, influence, or knowledge of the affairs of the Company to gain personal advantage.

44.    At all times relevant hereto, the Individual Defendants were the agents of each other and of Vestis and were at all times acting within the course and scope of such agency.

45.    Because of their advisory, executive, managerial, and directorial positions with Vestis, each of the Individual Defendants had access to adverse, non-public information about the Company.

46.    The Individual Defendants, because of their positions of control and authority, were able to and did, directly or indirectly, exercise control over the wrongful acts complained of herein, as well as the contents of the various public statements issued by Vestis.

## **CONSPIRACY, AIDING AND ABETTING, AND CONCERTED ACTION**

47.    In committing the wrongful acts alleged herein, the Individual Defendants have pursued, or joined in the pursuit of, a common course of conduct, and have acted in concert with and conspired with one another in furtherance of their wrongdoing.  The Individual Defendants caused the Company to conceal the true facts as alleged herein.  The Individual Defendants further aided and abetted and/or assisted each other in breaching their respective duties.

48.    The purpose and effect of the conspiracy, common enterprise, and/or common course of conduct was, among other things, to facilitate and disguise the Individual Defendants' violations of law, including breaches of fiduciary duty and unjust enrichment.

49.    The Individual Defendants accomplished their conspiracy, common enterprise, and/or common course of conduct by causing the Company purposefully, recklessly, or negligently to conceal material facts, fail to correct such misrepresentations, and violate applicable laws.

50.    In furtherance of this plan, conspiracy, and course of conduct, the Individual Defendants collectively and individually took the actions set forth herein.  Because the actions described herein occurred under the authority of the Board, each of the Individual Defendants, who are directors of Vestis, was a direct, necessary, and substantial participant in the conspiracy, common enterprise, and/or common course of conduct complained of herein.

51.    Each of the Individual Defendants aided and abetted and rendered substantial assistance in the wrongs complained of herein. In taking such actions to substantially assist the commission of the wrongdoing complained of herein, each Individual Defendant acted with actual or constructive knowledge of the primary wrongdoing, either took direct part in, or substantially assisted the accomplishment

of that wrongdoing, and was or should have been aware of his or her overall contribution to and furtherance of the wrongdoing.

52.    At all times relevant hereto, each of the Individual Defendants was the agent of each of the other Defendants and of Vestis and at all times acted within the course and scope of such agency.

## VESTIS'S CODE OF CONDUCT

53.    Vestis maintains a Business Conduct Policy intended to outline the legal and ethical standards that every employee at Vestis (also referred to as teammates), and anyone acting on Vestis's behalf, must follow, as well as provide the guidelines and resources to conduct business ethically and in compliance with the laws in every country in which Vestis conducts business.

54.    The Code of Conduct begins with a letter from CEO Scott to employees stating, among other things, that the policy applies to teammates, senior leaders, the Board, and anyone acting on Vestis's behalf.

55.    The Code of Conduct instructs employees that if they become aware of a possible violation of the Code of Conduct or any law, or even the appearance of a violation, they must report the incident.

56.    In a section titled "Compliance With Laws," the Code of Conduct provides:

It is Vestis's policy to comply with the laws in each country, state, and locality in which Vestis conducts business. This includes, but is not limited to, compliance with employment, labor, and workplace rules; data privacy, cybersecurity, environmental, antitrust, gifts and entertainment, and securities laws; and the United States Foreign Corrupt Practices Act, and other anticorruption/anti-bribery laws. Every Vestis teammate and any person or entity acting on Vestis's behalf must adhere to the restrictions and standards imposed by those laws and regulations.

57.    With respect to conflicts of interest, the Code of Conduct states, in

relevant part:

Our Conflicts of Interest Policy requires you to avoid any situation that creates a real or perceived conflict of interest. Conflicts can occur when the personal interests, activities, or investments of you or your family members, a romantic partner, or a close personal relationship could affect, or even appear to affect, your decision-making or the decision-making of others.

A conflict of interest is not necessarily a BCP violation, but failing to disclose it is. If you think you may have a conflict of interest, or if you are aware of a potential conflict of interest involving you or another teammate, immediately disclose the situation to your manager so that it can be evaluated. If you have any conflict of interest questions, contact the Legal Department.

58.    In a section titled "Accurate Books and Records," the Code of

Conduct provides, in relevant part:

We must ensure that our books and records are complete, accurate, honest, and timely. You must never falsify, or ask or cause someone else to falsify, company books or records or customer documentation by making false entries through deliberate omission, or by creating records without knowledge of their accuracy. All expense reports, accounts payable, invoice transmittals, inventory summaries, customer billing data, payroll data, and any other similar documents

or records must be complete, accurate, honest, and timely. You may not open or maintain any undisclosed or unrecorded corporate account, fund, or asset or any account with a misleading purpose.

You must not provide false or misleading information to anyone, including the Vestis Legal Department, Vestis's Internal Audit Department, or our independent auditors.

59.    With respect to "Public Disclosures," the Code of Conduct states:

All teammates involved in Vestis's disclosure process are responsible for ensuring that filings and submissions with the Securities and Exchange Commission and other public communications are full, fair, timely, accurate, and understandable.

## VESTIS'S AUDIT COMMITTEE CHARTER

60.    Vestis's Audit Committee Charter states that the purpose of the Audit Committee is to assist the Board in its oversight of:

[T]he performance of the Corporation's internal audit function and the independent auditors; the accounting, reporting and financial practices of the Corporation, including the quality and integrity of the Corporation's financial statements, including internal controls; the qualifications and independence of the independent auditors; the Corporation's compliance with legal and regulatory requirements; risk assessment and management; and the Corporation's information technology ("IT") functions and security program.

61.    The Audit Committee Charter provides that the Audit Committee, in fulfilling its functions, powers, and responsibilities, with respect to financial reporting, shall:

1. Meet to review and discuss with management and the independent auditors prior to public dissemination the Corporation's annual audited financial statements and quarterly financial statements, including: (A) the profit and loss statement, the balance sheet and

22

statement of cash flows including variances and changes therein, (B) an analysis prepared by management and/or the independent auditor, setting forth significant financial reporting issues and judgments made in connection with the preparation of the financial statements, (C) the Corporation's disclosures under "Management's Discussion and Analysis of Financial Condition and Results of Operations," including accounting policies that may be regarded as critical; and (D) major issues regarding the Corporation's accounting principles and financial statement presentations, including any significant change in the Corporation's selection or application of accounting principles and financial statement presentations; and receive reports from the independent auditors as required by SEC and/or Public Company Accounting Oversight Board (PCAOB) rules.

2. Review with management and discuss the Corporation's earnings press releases, as well as financial information and earnings guidance provided to analysts and rating agencies, including the type and presentation of information, paying particular attention to any pro forma or adjusted non-GAAP information. Such discussions may be in general terms (i.e., discussion of the types of information to be disclosed and the type of presentations to be made).

3. In consultation with the independent auditors, management and the internal auditors, review the Corporation's financial reporting processes and accounting standards and principles.

4. Review periodically the effect of regulatory and accounting initiatives, as well as offbalance sheet structures (if any), on the financial statements of the Corporation.

5. Review with the independent auditors and the Vice President, Internal Audit: (i) any audit problems or other difficulties encountered by the auditor in the course of the audit process, including any restrictions on the scope of the independent auditor's activities or on access to requested information, and any disagreements with management, and (ii) management's responses to such matters. Without excluding other possibilities, the Committee may wish to review with the independent registered public accounting firm (i) any accounting adjustments that were noted or proposed by such firm but were "passed" (as immaterial or otherwise), (ii) any communications between the audit team and the audit firm's national office respecting

auditing or accounting issues presented by the engagement and (iii) any "management" or "internal control" letter issued, or proposed to be issued, by the independent registered public accounting firm to the Corporation.

6. Recommend to the Board whether the Corporation's annual financial statements should be included in the Annual Report on Form 10-K.

7. Review and approve all reports and disclosure with respect to matters related to the Committee required to be included in the Corporation's Form 10-K or proxy statement, as applicable, pursuant to applicable rules and regulations of the SEC.

8. Review with the General Counsel legal matters that may have a significant impact on the Corporation's financial statements.

9. Review any fraud, whether or not material, that involves management or other employees who have a significant role in the company's internal controls.

62. With respect to "Accounting Controls and Personnel," the Audit Committee Charter provides that the Audit Committee's responsibilities shall include:

1. Review the adequacy and effectiveness of the Corporation's internal controls over financial reporting, including any significant deficiencies or material weaknesses in and significant changes to internal controls reported to the Committee by the independent auditors or management. Review any special audit steps adopted in light of material control deficiencies and the adequacy of disclosures about changes in internal control over financial reporting.

2. Discuss with management and the independent auditors the Corporation's guidelines and policies with respect to risk assessment and risk management. While it is the responsibility of senior management to assess and manage the Corporation's exposure to risk, the Committee shall discuss the Corporation's major financial risk exposure and the steps management has taken to monitor and control such exposures, including without limitation insurance.

3. Periodically review, with the independent auditor, the internal audit function's responsibility, budget, staffing, the scope and results of internal auditing procedures, and performance. Annually review and recommend changes (if any) to the internal audit charter.

4. Review and concur on the appointment, compensation, removal and replacement of the Vice President, Internal Audit.  The Vice President, Internal Audit shall report to the Committee and administratively to the Chief Financial Officer.

5. Set clear hiring policies for the Company's hiring of employees or former employees of the independent auditors. At a minimum, these policies must provide that any independent registered public accounting firm may not provide audit services to the Corporation if the CEO, controller, CFO, chief accounting officer or any person serving in an equivalent capacity for the Corporation was employed by the independent registered public accounting firm and participated in any capacity in the audit of the Corporation during the one-year period preceding the date of the initiation of the audit.

6. Review and evaluate the strategy with respect to and adequacy of the Corporation's IT functions and security program, compliance and controls. Review the Corporation's IT functions and security controls with management and, at least annually, with the Board.

7. Consider the risk of management's ability to override the Company's internal controls.

8. Review and assess the scope and readiness of the Company's business continuity plans.

63.     With respect to "Business Conduct and Ethics," The Audit Committee

Charter states that the Audit Committee's responsibilities shall include:

1. Establish procedures for: (i) the receipt, retention and treatment of complaints received by the Corporation regarding accounting, internal accounting controls or auditing matters; and (ii) the confidential, anonymous submission by employees of the Corporation of concerns regarding questionable accounting or auditing matters.

2. Monitor compliance with the Corporation's Business Conduct Policy and review and approve any requests for waivers of the Business Conduct Policy for executive officers and directors.

3. Establish, maintain and administer a policy with regard to related party transactions. Discuss with the independent registered public accounting firm its evaluation of the Company's identification of, accounting for, and disclosure of its relationships with related parties as set forth under the standards of the PCAOB.

4. Conduct investigations of allegations of management misconduct or other matters within the Committee's scope of responsibilities when deemed necessary or desirable.

5. Discuss with management the Corporation's guidelines and policies with respect to the use of artificial intelligence and associated risk management.

## SUBSTANTIVE ALLEGATIONS

### *Background*

64.    Vestis is a uniform services and workplace supplies company that provides a range of uniform rentals and workplace supplies across the United States and Canada. Prior to the September 2023 Spinoff, Vestis operated as a division of Aramark known as Aramark Uniform Services.

65.    On September 29, 2023, Vestis and Aramark entered into a Separation and Distribution Agreement providing, among other things, for the transfer of certain assets and liabilities to be transferred in connection with the Spinoff.

66.    The Spinoff was completed through a distribution to Aramark stockholders of one share of Vestis common stock for every two shares of Aramark

common stock held as of the close of business on September 20, 2023. Such shares were distributed on September 30, 2023.

67.    On October 2, 2023, Aramark announced it had completed the Spinoff. Vestis began trading as a public company on the NYSE that same day.

### Materially False and Misleading Statements

68.    On September 13, 2023, Vestis executives held "the very first Vestis Analyst Day." Incoming Vestis CEO Scott explained to investors at the outset of the call that she had "joined Aramark Uniform Services a couple of years ago with the intent of preparing the business for this exact moment."

69.    During the event, Defendant Scott told investors they could expect "5% to 7% top line growth on CAGR," which included "2% to 3% from high quality new growth," "2% to 3% from retaining our existing customers," and "about a percent of pricing on average." Defendant Dillon claimed that Vestis would operate with an "annual capital investment [that] will be about 3% of revenue."

70.    Also during the event, Scott described for investors the methodical strategy used to create growth opportunities for Vestis:

> We have been extremely prudent about the way that we built this plan, and we've been very measured about modest investments, leveraging the investments that Aramark already quite wisely made in this business, the ramping of the sales force, the investment of our operating system platform, those investments are in place. They've

27

been made, they're in our run rate and we're going to take great advantage of those.

71.     Defendant Scott also explained that the Company's 5% to 7% growth would come from (1) "2% to 3% from high quality new growth," (2) "2% to 3% from retaining our existing customers," and (3) "about a percent of pricing on average." With respect to pricing and inflationary concerns, Defendant Dillon stated, "[W]e've also demonstrated our ability to take price and pass through inflation as one of the ways to deal with an inflationary environment."

72.     Vestis's executives also highlighted the investments made in the Company's sales force. Defendant Dillon highlighted how, "most importantly, the sales force numbers stay with us because we think we're at the right team level." Defendant Scott added that sales force members "have reached their stride" and are "now hitting the productivity levels that we desire for them." Defendant Scott further claimed, "[W]e're managing performance very effectively and we're making sure that we get the right revenue per head."

73.     On November 29, 2023, the Company issued a press release announcing financial results for the fourth quarter of fiscal year 2023 ended September 29, 2023. During a call with analysts and investors held the same day, Defendant Scott stated, "[W]e are pleased to share our outlook for fiscal year 2024, a revenue growth rate of 4% to 4.5%, which is well above our historical norms of

approximately 2%." Scott further explained that, "throughout 2023, we continued to establish a strong foundation for profitable growth[,]" and as a result, "we are well-positioned to deliver healthy revenue growth and margin expansion."

74.    During the same call, in response to an analyst request for comment "on recent trends in add/stop, net new, and of client retention," Scott replied: "[W]e continue to focus on creating an amazing customer experience[,]" and "we are seeing really, really great feedback from our customers around these initiatives, and so we feel very, very good about the establishment of a service excellence culture across our company."

75.    On February 7, 2024, the Company issued a press release announcing financial results for the first quarter of fiscal year 2024. The press release reported revenue for the quarter of $717.9 million, a 1.3% shortfall compared to analyst consensus estimates.

76.    During a call with analysts and investors held the same day, Defendant Scott proclaimed that "as we move through the balance of the year, we expect acceleration of our growth rates that will follow similar patterns from prior years[,]" and as a result, "I remain confident in our ability to deliver our full[-]year guidance of 4% to 4.5% revenue growth." Scott further added "We are also seeing opportunity for additional pricing actions in the back half of the year." In response to an analyst request to expand on that comment, Scott explained, "We've been

very thoughtful and I would say somewhat moderated about pricing in the first quarter . . . . [W]e've been managing that and monitoring it very closely just to see customer attrition and modeling and understanding how customers are responding."

77.   On the same call, in response to an analyst request to "comment on retention, the trends and the drivers, whether it[']s service quality[,]" Scott responded that "to answer your question around why you see customers leave, we are seeing small to medium enterprise customers with an uptick in business closures."

78.   The statements detailed above were false and misleading, and omitted material facts, in that they failed to disclose: (a) Aramark had historically underinvested in the Aramark Uniform Services business, which would become Vestis following the Spinoff; (b) Vestis operated with outdated facilities and an underperforming sales force; and (c) the Company's outdated facilities and underperforming sales force led to "service gaps" that had impeded the Company's levers of growth and had resulted in customer attrition. As a result, the Individual Defendants caused the Company's public statements to be materially false and misleading at all relevant times.

*The Truth Emerges*

79.     The truth began to emerge on May 2, 2024, when the Company issued a press release and filed a current report on Form 8-K with the SEC announcing financial results for the second quarter of fiscal year 2024. The press release disclosed disappointing revenue results including, among other things, reported quarterly revenues of $705 million—just a 0.9% increase from the same fiscal quarter a year before. The Company also reported a "Revised Fiscal Year 2024 Outlook," with Vestis "now expect[ed] to deliver fiscal 2024 revenue growth in the range of [negative] (1)% to 0%."

80.     Also on May 2, 2024, the Company hosted an earnings call with analysts and investors. During that call, Defendant Scott attributed the underperformance to "short-term challenges related to sale productivity and deliberate moderated pricing actions." Scott further disclosed, "we are taking actions to enhance our service," "which will allow us to revisit pricing." Scott explained that "service gaps" had led to client retention issues and prevented Vestis from raising prices and had "driven price sensitivity." In contrast to her statements from the previous quarter, Scott acknowledged that the problems with customer retention were not the result of "business closures," stating: "[W]e know that more than 70% of the cancellations are due to causes that are within our

control." In further contrast to her own prior statements, Scott admitted that Vestis "[had] been slow to gain traction with [its] sales force."

81.     Following this news, the price of Vestis stock dropped 45%, from a closing price of $18.47 per share on May 1, 2024, to a closing price of $10.16 per share on May 2, 2024.

***Harm to the Company***

82.     As a direct and proximate result of the Individual Defendants' misconduct, Vestis has lost and expended, and will lose and expend, millions of dollars.

83.     Such expenditures include, but are not limited to, legal fees associated with the Securities Class Action filed against the Company, its CEO, and CFO, and amounts paid to outside lawyers, accountants, and investigators in connection thereto.

84.     Such expenditures also include, but are not limited to, the cost of implementing measures to remediate the material weaknesses in the Company's internal control over financial reporting.

85.     Such losses also include, but are not limited to, significant compensation and benefits paid to the Individual Defendants who breached their fiduciary duties to the Company, including bonuses tied to the Company's

attainment of certain objectives, and benefits paid to the Individual Defendants who breached their fiduciary duties to the Company.

86.    As a direct and proximate result of the Individual Defendants' conduct, Vestis has also suffered and will continue to suffer a loss of reputation and goodwill, and a "liar's discount" that will plague the Company's stock in the future due to the Company's misrepresentations and the Individual Defendants' breaches of fiduciary duties and unjust enrichment.

## DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

87.    Plaintiff brings this action derivatively in the right and for the benefit of the Company to redress injuries suffered and to be suffered as a direct and proximate result of the breaches of fiduciary duties by the Individual Defendants.

88.    Vestis is named solely as a nominal party in this action.  This is not a collusive action to confer jurisdiction on this Court that it would otherwise not have.

89.    Plaintiff is an owner of Vestis common stock and has been a continuous shareholder of Company stock at all relevant times.

90.    Plaintiff will adequately and fairly represent the interests of the Company in enforcing and prosecuting its rights and retained counsel competent and experienced in derivative litigation.

91.     A pre-suit demand on the Board of Vestis is futile and, therefore, excused. At the time this action was commenced, the eight-member Board consisted of Individual Defendants Scott, Holloman, Burke, Jokinen, McKee, Pertz, Whitney, and Williams (the "Director Defendants"). As set forth below, all eight Director Defendants are incapable of making an independent and disinterested decision to institute and vigorously prosecute this action because they face a substantial likelihood of liability for misconduct alleged herein. Therefore, demand on the Board to institute this action is not necessary because such a demand would have been a futile and useless act.

92.     The acts complained of herein constitute violations of fiduciary duties owed by Vestis's officers and directors, and these acts are incapable of ratification.

93.     The Director Defendants either knew or should have known of the false and misleading statements that were issued on the Company's behalf and took no steps in a good faith effort to prevent or remedy that situation.

94.     Each of the Director Defendants approved and/or permitted the wrongs alleged herein to have occurred and participated in efforts to conceal or disguise those wrongs from the Company's stockholders or recklessly and/or with gross negligence disregarded the wrongs complained of herein and are therefore not disinterested parties.

95.    Each of the Director Defendants authorized and/or permitted false statements to be disseminated directly to the public and made available and distributed to shareholders, authorized and/or permitted the issuance of various false and misleading statements, and are principal beneficiaries of the wrongdoing alleged herein, and thus, could not fairly and fully prosecute such a suit even if they instituted it.

96.    Additionally, the Director Defendants received payments, benefits, stock options, and other emoluments by virtue of their membership on the Board and their control of the Company.

97.    Moreover, the Director Defendants willfully ignored, or recklessly failed to inform themselves of, the obvious problems with the Company's internal controls, practices, and procedures and failed to make a good faith effort to correct the problems or prevent their recurrence. As a result of the foregoing, the Director Defendants breached their fiduciary duties, face a substantial likelihood of liability, are not disinterested, and demand upon them is futile, and thus excused.

98.    Additionally, the Director Defendants took no action to redress the harm suffered by the Company resulting from the misconduct alleged herein.

99.    Defendants Jokinen, Burke, Pertz, and Whitney (the "Audit Defendants") serve on the Company's Audit Committee and, pursuant to the Audit Committee Charter, were specifically charged with the responsibility to assist the

35

Board in fulfilling its oversight responsibilities related to, *inter alia*, financial reporting and the underlying internal controls and procedures over financial reporting. At all relevant times, however, the Audit Defendants breached their fiduciary duty to the Company by failing to prevent, correct, or inform the Board of the issuance of material misstatements and omissions regarding the Company's business, finances, and operations as alleged above. Therefore, the Audit Defendants cannot independently consider any demand to sue themselves for breaching their fiduciary duties to the Company, as that would expose them to substantial liability and threaten their livelihoods.

100.   Further, the Director Defendants, as members of the Board, were and are subject to the Company's Code of Conduct. The Code of Conduct goes well beyond the basic fiduciary duties required by applicable laws, rules, and regulations, requiring the Director Defendants to also adhere to the Company's standards of business conduct. The Director Defendants violated the Code of Conduct because they knowingly or recklessly participated in making and/or causing the Company to make the materially false and misleading statements alleged herein. Because the Director Defendants violated the Code of Conduct, they face a substantial likelihood of liability for breaching their fiduciary duties, and therefore demand upon them is futile.

## COUNT I

### Against The Individual Defendants For Violations of § 10(b)
### of the Exchange Act and Rule 10b-5

101.   Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

102.   The Individual Defendants violated § 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

103.   The Individual Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

104.   The Individual Defendants violated §10(b) of the Exchange Act and Rule 10b-5 in that they: (i) employed devices, schemes and artifices to defraud; (ii) made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or (iii) engaged in acts, practices and a course of business that operated as a fraud or deceit upon Plaintiff and others similarly situated.

105.   The Individual Defendants acted with scienter because they (i) knew that the public documents and statements issued or disseminated in the name of Vestis were materially false and misleading; (ii) knew that such statements or documents would be issued or disseminated to the investing public; and (iii) knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws.

106.   The Individual Defendants, by virtue of their receipt of information reflecting the true facts of Vestis, their control over, and/or receipt and/or modification of Vestis's allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning Vestis, participated in the fraudulent scheme alleged herein.

107.   As a result of the foregoing, the market price of Vestis common stock was artificially inflated. In ignorance of the falsity of the statements, stockholders relied on the statements described above and/or the integrity of the market price of Vestis common stock in purchasing Vestis common stock at prices that were artificially inflated as a result of these false and misleading statements and were damaged thereby.

108.   In addition, as a result of the wrongful conduct alleged herein, the Company has suffered significant damages, including the costs and expenses incurred in defending itself in the Securities Class Action and reputational harm. The Individual Defendants, through their violation of Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5, have exposed the Company to millions of dollars in potential class-wide damages in the Securities Class Action.

## COUNT II

### Against The Individual Defendants
### For Breach Of Fiduciary Duty

109.   Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

110.   The Individual Defendants owe the Company fiduciary obligations. By reason of their fiduciary relationships, the Individual Defendants owed the Company the highest obligation of good faith, candor, loyalty, and due care.

111.   The Individual Defendants willfully ignored the obvious deficiencies in the Company's internal controls, practices, and procedures and failed to make a good faith effort to correct the problems or prevent their recurrence.

112.   The Individual Defendants engaged in a sustained and systematic failure to properly exercise their fiduciary duties. Among other things, the Individual Defendants breached their fiduciary duties of loyalty and good faith by

permitting the use of inadequate practices and procedures to guide the truthful dissemination of Company news to the investing public and to the Company's shareholders, allowing or permitting false and misleading statements to be disseminated in the Company's SEC filings and other disclosures, and otherwise failing to ensure that adequate internal controls were in place regarding the serious business reporting issues and deficiencies described above. These actions could not have been a good faith exercise of prudent business judgment to protect and promote the Company's corporate interests.

113.   Specifically, the Individual Defendants made or caused the Company to make false and misleading statements, and omitted material facts, in that: (a) Aramark had historically underinvested in the Aramark Uniform Services business, which would become Vestis following the Spinoff; (b) Vestis operated with outdated facilities and an underperforming sales force; and (c) the Company's outdated facilities and underperforming sales force led to "service gaps" that had impeded the Company's levers of growth and had resulted in customer attrition. As a result, the Individual Defendants caused the Company's public statements to be materially false and misleading at all relevant times.

114.   In further breach of their fiduciary duties, the Individual Defendants failed to correct and/or caused the Company to fail to correct the false and/or misleading statements and omissions of material fact referenced herein.

115.   As a direct and proximate result of the Individual Defendants' failure to fulfill their fiduciary obligations, the Company has sustained significant damages.

116.   As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company. As a direct and proximate result of the Individual Defendants' breach of their fiduciary duties, the Company has suffered damage, not only monetarily, but also to its corporate image and goodwill. Such damage includes, among other things, costs incurred in defending itself in the Securities Class Action, exposing the Company to millions of dollars in potential class-wide damages in the Securities Class Action, and damage to the share price of the Company's stock, resulting in an increased cost of capital, and reputational harm.

117.   Plaintiff, on behalf of Vestis, has no adequate remedy at law.

## COUNT III

### Against The Individual Defendants for Aiding and Abetting Breach of Fiduciary Duty

118.   Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

119.   By encouraging and accomplishing the illegal and improper transactions alleged herein and concealing them from the public, the Individual

Defendants have each encouraged, facilitated, and advanced their breach of their fiduciary duties. In so doing, the Individual Defendants have each aided and abetted, conspired, and schemed with one another to breach their fiduciary duties, waste the Company's corporate assets, and engage in the ultra vires and illegal conduct complained of herein.

120.   Plaintiff on behalf of Vestis has no adequate remedy at law.

## COUNT IV

**Against The Individual Defendants for Unjust Enrichment**

121.   Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

122.   By their wrongful acts, violations of law, and false and misleading statements and omissions of material fact that they made and/or caused to be made, the Individual Defendants were unjustly enriched at the expense of, and to the detriment of, Vestis.

123.   The Individual Defendants either benefitted financially from the improper conduct, or received bonuses, stock options, or similar compensation from Vestis that was tied to the performance or artificially inflated valuation of Vestis or received compensation that was unjust in light of the Individual Defendants' bad faith conduct.

124.  Plaintiff, as a shareholder and a representative of Vestis, seeks restitution from the Individual Defendants and seeks an order from this Court disgorging all profits, benefits and other compensation procured by the Individual Defendants due to their wrongful conduct and breach of their fiduciary and contractual duties.

125.  Plaintiff, on behalf of Vestis, has no adequate remedy at law.

## COUNT V

### Against The Individual Defendants For Waste Of Corporate Assets

126.  Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

127.  The Individual Defendants breached their fiduciary duties by failing to properly supervise and monitor the adequacy of the Company's internal controls, by issuing, causing the issuance of, and/or failing to correct the false and misleading statements identified herein, and by allowing the Company to engage in an illegal, unethical, and improper course of conduct, which was continuous, connected, and ongoing at all relevant times.

128.  As a result of the misconduct described above, the Individual Defendants wasted corporate assets by, *inter alia*: (a) paying and collecting excessive compensation and bonuses; and (b) incurring potentially millions of

dollars of legal liability and/or legal costs, including defending the Company and its officers against the Securities Class Action.

129.   As a result of the waste of corporate assets, the Individual Defendants are liable to the Company.

130.   Plaintiff, on behalf Vestis, has no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

A.   Declaring that Plaintiff may maintain this derivative action on behalf of Vestis and that Plaintiff is a proper and adequate representative of the Company;

B.   Awarding the amount of damages sustained by the Company as a result of the Individual Defendants' breaches of fiduciary duties and unjust enrichment;

C.   Directing Vestis to take all necessary actions to reform and improve its corporate governance and internal procedures to protect Vestis and its stockholders from a repeat of the damaging events described herein, including, but not limited to:

- strengthening the Board's supervision of operations and compliance with applicable state and federal laws and regulations;

- strengthening the Company's internal reporting and financial disclosure controls;

- developing and implementing procedures for greater shareholder input into the policies and guidelines of the Board; and

- strengthening the Company's internal operational control functions;

C.    Awarding punitive damages;

D.    Awarding costs and disbursements of this action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

E.    Granting such other and further relief as the Court deems just and proper.

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury.

Dated: July 10, 2024                         **WEBB, KLASE & LEMOND, LLC**

                                             By:   */s/ G. Franklin Lemond, Jr.*
                                                   E. Adam Webb
Of Counsel:                                          Georgia Bar No. 743910
                                                   G. Franklin Lemond, Jr.
**RIGRODSKY LAW, P.A.**                              Georgia Bar No. 141315
Seth D. Rigrodsky, Esq.
Gina M. Serra, Esq.                                1900 The Exchange, S.E.
Herbert W. Mondros, Esq.                           Suite 480
300 Delaware Avenue, Suite 210                     Atlanta, Georgia 30339
Wilmington, DE 19801                               Telephone: (770) 444-9594
Telephone: (302) 295-5310                          Email: adam@webbllc.com
Facsimile: (302) 654-7530                          Email: franklin@webbllc.com
Email: sdr@rl-legal.com
Email: gms@rl-legal.com                            *Attorneys for Plaintiff*
Email: hwm@rl-legal.com

**GRABAR LAW OFFICE**
Joshua H. Grabar, Esq.
One Liberty Place
1650 Market Street, Suite 3600
Philadelphia, PA 19103
(267) 507-6085